**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

INFINITE MASTER MAGNETIC, aka JESSE JEROME POINTER,

Plaintiff

v.

STATE OF NEVADA, et. al.,

Defendants

Case No.: 3:21-cv-00122-MMD-WGC

**Report & Recommendation of United States Magistrate Judge**

Re: ECF Nos. 1, 1-1

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Plaintiff, who is in the custody of Lake's Crossing Center,[1] has filed an application to proceed in forma pauperis (IFP) (ECF No. 1) and pro se complaint (ECF No. 1-1). For the reasons stated below, Plaintiff's IFP application should be granted, and he should be required to pay the $350 filing fee over time. In addition, certain defendants should be dismissed with prejudice, while other defendants and claims should be dismissed with leave to amend.

## I. IFP APPLICATION

A person may be granted permission to proceed IFP if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to

---

[1] Lake's Crossing Center is a maximum security psychiatric facility where individuals are ordered by courts for evaluation and/or treatment to restore legal competency. *See http://dpbh.nv.gov/About/Overview/Lake_s_Crossing_Center_Overview/*

pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1).

The Local Rules of Practice for the District of Nevada provide: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP]. The application must be made on the form provided by the court and must include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

"[T]he supporting affidavits [must] state the facts as to [the] affiant's poverty with some particularity, definiteness and certainty." *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (quotation marks and citation omitted). A litigant need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

An inmate submitting an application to proceed IFP must also "submit a certificate from the institution certifying the amount of funds currently held in the applicant's trust account at the institution and the net deposits in the applicant's account for the six months prior to the date of submission of the application." LSR 1-2; *see also* 28 U.S.C. § 1915(a)(2). If the inmate has been at the institution for less than six months, "the certificate must show the account's activity for this shortened period." LSR 1-2.

If a prisoner brings a civil action IFP, the prisoner is still required to pay the full amount of the filing fee. 28 U.S.C. § 1915(b)(1). The court will assess and collect (when funds exist) an initial partial filing fee that is calculated as 20 percent of the greater of the average monthly deposits or the average monthly balance for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A)-(B). After the initial partial filing fee is paid, the prisoner is required to make monthly payments equal to 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency that has custody

of the prisoner will forward payments from the prisoner's account to the court clerk each time the account exceeds $10 until the filing fees are paid. 28 U.S.C. § 1915(b)(2).

Plaintiff's certified account statement indicates that he has not had any money on his books since 2014. (ECF No. 1.) Therefore, Plaintiff's application to proceed IFP should be granted. Plaintiff should not be required to pay an initial partial filing fee; however, whenever his account exceeds $10, he should be required to make monthly payments in the amount of 20 percent of the preceding month's income credited to his account until the $350 filing fee is paid.

## II. SCREENING

### A. Standard

Under the statute governing IFP proceedings, "the court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

In addition, under 28 U.S.C. § 1915A, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) and

28 U.S.C. § 1915A(b)(1) track that language. As such, when reviewing the adequacy of a complaint under these statutes, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's Complaint**

Plaintiff's complaint names the following Defendants: the State of Nevada, Officer Brit, Officer Neaul, Metro Police Department (presumably Las Vegas Metro Police Department or LVMPD), Clark County Detention Center (CCDC), Judge Linda Bell, Lake's Crossing Center, Dr. Colepepper, and John Doe Officers.

Plaintiff's complaint is vague and confusing, but briefly mentions that he was beaten and "basically robbed" by officers where he was arrested, and that he was beaten again in lock up when his head was split open and he was placed in a restraint chair and was not given medical attention. Plaintiff further alleges that he never appeared in anyone's courtroom or before a public defender. He makes vague reference to racial profiling and being placed under a guardianship or as a ward of the state under the same individuals he had filed grievances about.

Finally, Plaintiff asserts that Dr. Colepepper forced injections against Plaintiff's religious beliefs and extreme objections. He claims he was assaulted by Jane and John Doe staff members. He also references the First Amendment right to freedom of the press, freedom of speech, and the establishment of religion.

**C. Analysis**

**1. Section 1983**

42 U.S.C. § 1983 provides a mechanism for the private enforcement of substantive rights conferred by the Constitution and federal statutes. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citation omitted). To state a claim under section 1983, a plaintiff must allege: (1) his or her civil rights were violated, (2) by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42,

48-49 (1988). To adequately plead the section 1983 elements, a complaint must identify what constitutional right each defendant violated, and provide sufficient facts to plausibly support each violation. *See e.g., Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (noting defendants must personally participate in misconduct to be liable under section 1983).

**2. State of Nevada and Lake's Crossing Center**

States are not persons for purposes of section 1983, and thus, the State of Nevada, and its agencies, such as Lake's Crossing, are not persons that may be sued under section 1983. Furthermore, they may not be sued in federal court because they are entitled to sovereign immunity under the Eleventh Amendment. *See Arizonans for Official English v. Arizona,* 520 U.S. 43, 69 (1997); *Howlett v. Rose,* 496 U.S. 356, 365 (1990); *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989); U.S. Const. amend XI. Therefore, the State of Nevada and Lake's Crossing Center should be dismissed from this action with prejudice.

**3. Judge Linda Bell**

The only allegation remotely tied to Judge Bell is that Plaintiff claims he did not appear in her courtroom. Even if this could provide some basis for liability, judges are entitled to absolute immunity for acts performed in their official capacity. *See In re Castillo*, 297 F.3d 940, 947 (9th Cir. 2002) (judicial immunity is "a 'sweeping form of immunity' for acts performed by judges that relate to the 'judicial process.'" "This absolute immunity insulates judges from charges of erroneous acts or irregular action, even when it is alleged that such action was driven by malicious or corrupt motives, … or when the exercise of judicial authority is 'flawed by the commission of grave procedural errors.'").

Therefore, Judge Linda Bell should be dismissed with prejudice.

**4. Officers Neaul and Brit, John/Jane Doe Officers- Excessive Force and Property Claims**

Plaintiff makes vague allegations that he was beaten and robbed by unidentified officers. He names Officers Neaul and Brit in the caption, but provides no substantive allegations concerning what role they played in any purported constitutional violation.

It is possible Plaintiff is attempting to assert an excessive force claim. It appears Plaintiff is claiming he was beaten incidental to his arrest. Claims of excessive force during an arrest or other seizure of a free citizen are evaluated under the Fourth Amendment and apply an "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989).This analysis "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (internal quotation marks and citation omitted).

Plaintiff also appears to assert that he was assaulted by John/Jane Doe Staff Members, possibly at Lake's Crossing; however, he provides no factual details about the alleged assault. Nor does he identify the pertinent staff members. Assuming that Plaintiff is at Lake's Crossing pending a competency determination or for other pretrial evaluation and treatment, and has not been convicted, the standard for excessive force applicable to pretrial detainees would apply. "[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham*, 490 U.S. at 395, n. 10. In determining whether the force used against a pretrial detainee is excessive, the court utilizes an objective standard. *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015). That is, the court must determine whether the force used was objectively reasonable. *Id*.

Plaintiff's excessive force claims should be dismissed with leave to amend, as Plaintiff does not include sufficient factual allegations to state a claim for relief. He does not include factual allegations to describe the specific conduct of each named defendant who allegedly utilized excessive force against him, or discuss when the force occurred or under what circumstances.

It also appears that Plaintiff is trying to assert a due process claim relative to his property he claims was stolen. While not entirely clear, it seems Plaintiff is asserting that his property was taken during an arrest, though he does not indicate when this occurred, or who was responsible for taking his items, and while he lists out several items in the complaint, he does not identify what items in particular he claims were taken.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027-30 (9th Cir. 2012).

The Fourteenth Amendment, applicable to the States by the Fifth Amendment, provides: "No State shall … deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. "Any significant taking of property by the State is within the purview of the Due Process Clause." *Id*. at 1031 (citation omitted). A person has a protected interest in the continued ownership of their unabandoned personal property. *Id*. at 1031-32 *(*citing *Nevada Dept. of Corr. v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (noting that "Nevada recognizes 'personal property' which includes 'money, goods, [and] chattels.' *See* Nev. Rev. Stat. 10.045, 10.065.) "'[T]he government may not take property like a thief in the night;

rather, it must announce its intentions and give the property owner a chance to argue against the taking.'" *Id*. at 1032 (quoting *Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008)). Procedural protections must be taken before an individual is permanently deprived of possessions. *Id*. (citing *Greene*, 648 F.3d at 1019). The actor "'must take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return.'" *Id*. (quoting *City of West Covina v. Perkins*, 525 U.S. 234, 240 (1999)).

As was indicated above, Plaintiff does not include sufficient factual allegations to state colorable Fourth and Fourteenth Amendment property claims. He does not state who took what particular property, when it was taken, and under what circumstances. Therefore, these claims should be dismissed with leave to amend.

**5. Metro Police Department and Clark County Detention Center**

LVMPD is a political subdivision that can sue or be sued however, a theory of municipal liability must be alleged to maintain a claim against LVMPD. *See* NRS 280.280(3). Plaintiff has not done so here.

CCDC, on the other hand, is not an entity that can sue or be sued. While Plaintiff could potentially maintain an action against Clark County, he must also allege a theory of municipal liability against the County.

In either case, as to LVMPD or Clark County, Plaintiff must allege facts that show a basis for municipal liability.

Municipalities may only be liable for the infringement of constitutional rights under certain circumstances. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-95 (1978). "In particular, municipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline;

or (4) a decision or act by a final policymaker." *Horton v. City of Santa Maria,* 915 F.3d 592, 602-03 (9th Cir. 2019). A municipality may not be sued under a respondeat superior theory. *Id.* at 603 (citing *Monell*, 436 U.S. at 693-95). In other words, a county may not be sued simply because it employs someone who is found to have violated a person's constitutional rights. Instead, "[a] plaintiff must [ ] show '*deliberate* action attributable to the municipality [that] directly caused a deprivation of federal rights.'" *Id*. (quoting *Bd. of Cty. Comm'rs v. Brown,* 520 U.S. 397, 415 (1997)) (emphasis original).

CCDC should be dismissed with prejudice; however, Plaintiff should be given leave to amend to attempt to assert a theory of municipal liability against Clark County. To the extent Plaintiff seeks to sue LVMPD, he should be given leave to amend to assert a theory of municipal liability.

**6. Dr. Colepepper**

Plaintiff includes a brief allegation that Dr. Colepepper forced injections against his religious beliefs and extreme objections.

In *Washington v. Harper*, 494 U.S. 210 (1990), the Supreme Court held that an inmate has "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Id*. at 221-22. However, "the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id*. at 227. The decision to medicate an inmate against his will satisfies due process when facilitated by an administrative review by medical personnel not then involved in the inmate's treatment. *Id*. at 233. Due process does not require a judicial hearing before an inmate may be involuntarily medicated. *Id*. at 228. Nor does it require

a hearing conducted in accordance with the rules of evidence or a "clear, cogent, and convincing" standard of proof. *Id*. at 235. Instead, due process is satisfied if the inmate is provided with notice, the right to be present at the adversarial hearing, and the right to present and cross-examine witnesses. *Id*. The appointment of counsel is not required; the provision of a lay adviser who understands the psychiatric issues involved is sufficient. *Id*. at 236. These protections may not apply in an emergency situation. *See Kulas v. Valdez*, 159 F.3d 453, 456 (9th Cir. 1998).

*Harper* was decided in the context of a convicted person. Again, assuming that Plaintiff has not yet been convicted, the Supreme Court has said that "[t]he Fourteenth Amendment affords at least as much protection [as *Harper* held it afforded to convicted inmates] to persons the State detains for trial." *Riggins v. Nevada*, 504 U.S. 127, 135 (1992) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). In *Riggins*, the Supreme Court noted it had not "had occasion to develop substantive standards for judging forced administration of such drugs in the trial or pretrial setting[.]" *Id*. In any event, the Court found that Nevada "would certainly have satisfied due process if [it had been demonstrated] that treatment with antipsychotic medication was medically appropriate, and considering less intrusive alternatives, essential for the sake of [the detainee's] own safety or the safety of others." *Id*. (citation omitted). In addition, the Court said that the State "might have been able to justify medically appropriate, involuntary treatment with the drug by establishing that it could not obtain an adjudication of [the detainee's] guilt or innocence by using less intrusive means." *Id*. (citation omitted).

In *Sell v. United States*, the Supreme Court addressed the standard for when the government may administer antipsychotic drugs involuntarily to a mentally ill criminal defendant to render him competent for trial. *Sell v. United States*, 539 U.S. 166 (2003). The

Court held that the government may forcibly medicate a mentally ill pretrial detainee for the purpose of rendering him competent to stand trial, but only if there is a determination that:

> there are important governmental trial-related interests at stake; that involuntary medication will significantly further these governmental interests, without causing side effects that will interfere significantly with the defendant's fair trial rights; that the medication is necessary to further the government's interests, taking into account less intrusive alternatives; and that the administration of the antipsychotic drugs is medically appropriate, i.e., in the defendant's best medical interest.

*United States v. Loughner*, 672 F.3d 731, 747 (9th Cir. 2012) (citing *Sell*, 539 U.S. at 180-81).

"A court need not consider whether to allow forced medication for [trial competency purposes], if forced medication is warranted for a *different* purpose, such as the purposes set out in *Harper* related to the individual's dangerousness. *Sell*, 539 U.S. at 181-82.

In *Loughner*, the Ninth Circuit concluded that the Supreme Court in *Sell* seemed to assume that a *Harper* hearing would be sufficient to involuntarily medicate a pretrial detainee on dangerousness grounds, and all circuits to consider the issue post-*Sell* have agreed that this is the case. *Loughner*, 672 F.3d at 748. Thus, the Ninth Circuit held in *Loughner* that "when the government seeks to medicate a detainee—whether pretrial or post-conviction—on the grounds that he is a danger to himself or others, the government must satisfy the standard set forth in *Harper*." *Loughner*, 672 F.3d at 752.

Returning to the case at hand, Plaintiff's complaint includes only the vague allegation that Dr. Colepepper forced injections against Plaintiff's religious beliefs and extreme objections. The court assumes that Plaintiff is referring to the forced-administration of antipsychotic drugs; however, this is not entirely clear from the pleading as Plaintiff includes no further factual allegations or circumstantial context. He does not even state what he was injected with. In fact, it is not even clear if Plaintiff is attempting to assert a due process claim based on the forced

administration of psychotropic drugs or if, instead, he is trying to assert a claim that the forced administration of some substance violated his religious rights under the First Amendment. The requirements for asserting a First Amendment religious exercise claim will be discussed below.

Therefore, Plaintiff's claim(s) against Dr. Colepepper should be dismissed, but with leave to amend to include additional factual details and to clarify the contours of his claim(s).

**7. First Amendment**

Plaintiff states that his First Amendment rights were violated, including his right to freedom of the press, freedom of speech, and the establishment of religion.

Plaintiff does not include any allegations that would give rise to a claim that his right to freedom of the press or freedom of speech were violated. He does not state what violated these rights, who violated them or point to the conduct of any particular defendant that would give rise to such a violation.

Nor does he specify how his rights were violated under the Establishment Clause. The Establishment Clause, applicable to state action by incorporation through the Fourteenth Amendment, states that "Congress shall make no law respecting the establishment of religion." U.S. Const. amend I. This means at least that "[n]either a state nor the Federal Government … can pass laws which aid one religion, aid all religions, or prefer one religion over another." *Hartmann v. Cal. Dep't of Corr.*, 707 F.3d 1114, 1125 (9th Cir. 2013).

While not mentioned specifically in the complaint, the Free Exercise Clause of the First Amendment prohibits government from making a law prohibiting the free exercise of religion. *Id*. at 1122. Again, Plaintiff states generally that he was given injections against his religious objections, but he does not include sufficient facts about his religion, what injections he was given and under what circumstances, and how this burdened his religious exercise.

In sum, Plaintiff's First Amendment claims should be dismissed, but with leave to amend.

**8. Medical Care**

Plaintiff also briefly mentions that after he was beaten while in lock up, he was not given medical attention; however, he does not state when this occurred, who was involved, or what any particular defendant did to violate his rights.

Assuming Plaintiff is a pretrial detainee and not a convicted prisoner, his claim for inadequate medical care is evaluated under an objective deliberate indifference standard. *See Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018). The plaintiff must show that:

> (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved-making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id*.

Plaintiff vaguely states that he was denied medical care, but does not state who denied him medical care or provide any other factual allegations that would give rise to a claim for denial of adequate medical care for a detainee under the Fourteenth Amendment. Therefore, this claim should be dismissed, but with leave to amend.

**III. RECOMMENDATION**

IT IS HEREBY RECOMMENDED that the District Judge enter an order:

(1) **GRANTING** Plaintiff's IFP application (ECF No. 1). Plaintiff should not be required to pay an initial partial filing fee; however, whenever his inmate account exceeds $10, he should be required to make monthly payments in the amount of 20 percent of the

preceding month's income credited to his account until the full $350 filing fee is paid. This is required even if the action is dismissed, or is otherwise unsuccessful. The Clerk should be directed to **SEND** a copy of an order adopting and accepting this Report and Recommendation to the attention of **Chief of Inmate Services for Lake's Crossing Center**,

(2) The complaint (ECF No. 1-1) should be **FILED**.

(3) The State of Nevada and Lake's Crossing Center should be **DISMISSED WITH PREJUDICE**;

(4) Judge Linda Bell should be **DISMISSED WITH PREJUDICE**;

(5) Plaintiff's excessive force and property claims should be **DISMISSED WITH LEAVE TO AMEND**;

(6) CCDC should be **DISMISSED WITH PREJUDICE**, but Plaintiff should be given **LEAVE TO AMEND** to attempt to assert a municipal theory of liability against Clark County;

(7) LVMPD should be **DISMISSED WITH LEAVE TO AMEND**;

(8) Plaintiff's claim(s) against Dr. Colepepper should be **DISMISSED WITH LEAVE TO AMEND**;

(9) Plaintiff's First Amendment claims should be **DISMISSED WITH LEAVE TO AMEND**;

(10) Plaintiff's denial of adequate medical care claim should be **DISMISSED WITH LEAVE TO AMEND**;

(11) Plaintiff should be given **30 DAYS** from the date of any order adopting this Report and Recommendation to file an amended complaint correcting the deficiencies noted above. Plaintiff should be advised that the amended complaint must be complete in and of itself without

referring or incorporating by reference any previous complaint. Any allegations, parties, or requests for relief from a prior complaint that are not carried forwarded in the amended complaint will no longer be before the court. Plaintiff should be further advised to clearly title the amended pleading as "AMENDED COMPLAINT." Finally, Plaintiff should be cautioned that a failure to timely file an amended complaint may result in this action being dismissed.

Plaintiff should be aware of the following:

1. That he may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: April 5, 2021

William G. Cobb
United States Magistrate Judge